UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x

GARRISON REDD,

                                  Plaintiff,

-against-

RADNET, INC., MID ROCKLAND IMAGING
PARTNERS, INC., and 1790 BROADWAY
ASSOCIATES LLC,

                               Defendants.

-------------------------------------------------------------x

Civil Case No: 1:25-cv-00548

**COMPLAINT**

**<u>JURY TRIAL REQUESTED</u>**

Plaintiff, Garrison Redd ("Plaintiff"), by and through his counsel, Hanski Partners LLC, hereby files this Complaint against Radnet, Inc. ("Radnet"), Mid Rockland Imaging Partners, Inc. ("Mid Rockland Imaging" and together with Radnet, the "Radnet Defendants"), and 1790 Broadway Associates LLC ("1790 Bdwy Assocs" and collectively with the Radnet Defendants, "Defendants").

Plaintiff seeks equitable, injunctive, and declaratory relief, together with attorneys' fees, costs, and expenses pursuant to Title III of the Americans with Disabilities Act 42 U.S.C. §12181, et. seq. ("ADA") and the New York City Human Rights Law ("City HRL", and together with the ADA, the "Human Rights Laws"). Plaintiff also seeks monetary damages pursuant to the City HRL.

Plaintiff hereby alleges the following upon information and belief:

**<u>JURISDICTION & VENUE</u>**

1.  This Court is vested with jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. §1331 and §1343 because this is an action for declaratory and injunctive relief pursuant to the ADA.

2.  Venue is proper in this District pursuant to 28 U.S.C. §1391(B) because the events giving

rise to this action occurred in the State of New York, County of New York; specifically, at the real property and commercial building thereon with the street address 1790 Broadway and vanity address 5 Columbus Circle ("Five Columbus").

3.   This Court has supplemental jurisdiction over Plaintiff's City HRL claim pursuant to 28 U.S.C. § 1367(a) as it is related to his claims arising under the ADA.

## FACTS COMMON TO ALL CAUSES OF ACTION

### *The Parties*

4.   Plaintiff is a resident of the State and City of New York.

5.   Plaintiff suffers from a physiological condition that renders him unable to walk using his musculoskeletal system, and which restricts Plaintiff's body motion range and movement.

6.   Unable to walk on his own, Plaintiff uses a wheelchair to move about.

7.   1790 Bdwy Assocs is a domestic limited liability company.

8.   1790 Bdwy Assocs conducts business within the State of New York, including at Five Columbus.

9.   1790 Bdwy Assocs owns and operates Five Columbus.

10. 1790 Bdwy Assocs leases space within Five Columbus to Mid Rockland Imaging for use and occupancy as a service establishment and professional office of a health care provider that provides outpatient diagnostic imaging (hereafter, also referred to as a "diagnostic imaging center").

11. The space 1790 Bdwy Assocs leases to Mid Rockland Imaging for use and occupancy as a diagnostic imaging center is located on multiple floors, including Five Columbus' subcellar, cellar and 9th floors.

12. Mid Rockland Imaging is a Foreign Business Corporation incorporated in Delaware.

13. Mid Rockland Imaging conducts business within the State of New York, including at Five Columbus.

14. Mid Rockland Imaging leases space at Five Columbus from 1790 Bdwy Assocs for use and occupancy as a diagnostic imaging center.

15. Mid Rockland Imaging owns and operates a diagnostic imaging center which conducts business under the name "Columbus Circle Imaging" at Five Columbus in the space it leases from 1790 Bdwy Assocs.

16. Mid Rockland Imaging owns and operates the Columbus Circle Imaging diagnostic imaging center at Five Columbus together with Radnet.

Radnet is a foreign business corporation incorporated in Delaware. Radnet conducts business within the State of New York, including at Five Columbus.

17. Radnet owns and operates the Columbus Circle Imaging diagnostic imaging center at Five Columbus together with Mid Rockland Imaging.

18. Radnet contracts with a medical practice to provide physician services at Columbus Circle Imaging with Radnet providing the medical practice use of Columbus Circle Imaging's aon-site diagnostic imaging equipment. *See* Radnet, Inc., Annual Report (Form 10-K), at 6 (February 29, 2024), available at https://www.sec.gov/Archives/edgar/data/790526/000162828024008035/rdnt-20231231.htm (last visited January 19, 2025).

19. Radent operates and manages all the non-medical functions at Columbia Circle Imaging, "including the provision of non-medical staff, accounting services, billing and collection, medical and office supplies, transcription services, maintenance of medical records, and marketing". *See Id.*

20. In addition, Radnet makes Columbia Circle Imaging's leased space available to the medical practice, manages the facility, and provides all furniture, fixtures and medical equipment at Columbia Circle Imaging. *See Id.* at 60.

21. Radnet has "exclusive authority over all non-medical decision making related to the ongoing business operations" at Columbus Circle Imaging including financial decisions.  and we determine the annual budget. Id. at 59.

### *Five Columbus*

22. Five Columbus is situated on the parcel of land located at the northeast corner of Broadway and West 58th Street designated as NYC Department of Finance Tax Lot 53 within Tax Block 1029 in the Borough of Manhattan.

23. The public entrance to Five Columbus is located on Broadway.

24. The public entrance is not accessible to wheelchair users as there are steps at the interior side of the public entrance.

Interior
Steps → 

25. Multiple passenger elevators located in the building lobby beyond Five Columbus' public entrance provide ingress to Columbus Circle Imaging.

26. The interior route to the passenger elevators and Columbus Circle Imaging is not accessible to wheelchair users as the steps at the interior of the public entrance obstruct the path of travel to the passenger elevators and Columbus Circle Imaging.

27. Five Columbus' public entrance, lobby, and its passenger elevators are reserved for the use of visitors and patrons of Columbus Circle Imaging and other building tenants.

28. Items and individuals that Defendants deem objectionable, or undesirable, must use Five Columbus' service entrance and freight elevators.

29. Five Columbus' service entrance and freight elevators are used to transport rubbish out of the building, for deliveries, and the movement of equipment, construction materials and debris, in and out of the building.

30. Five Columbus' service entrance is located on West 58th Street.

31. The interior route to Five Columbus' freight elevators is via the service entrance.

32. The interior route from Five Columbus' service entrance to its freight elevators is not obstructed by steps.

33. Access to Columbus Circle Imaging from the service entrance is only available by freight elevator.

34. Access to Columbus Circle Imaging from the service entrance requires an employee of Five Columbus to open the service entrance and operate the freight elevator

35. Access to Columbus Circle Imaging from the service entrance is dependent on the availability of an employee of Five Columbus.

36. Five Columbus was constructed prior to January 26, 1993.

37. At various times after January 26, 1992, Defendants remodeled, renovated, and/or reconstructed Columbus Circle Imaging's space within Five Columbus in a manner that affected or could have affected the way the space, or part of the space, is used.

38. Defendants remodeling, renovation and reconstruction Columbus Circle Imaging's space included:

    a. the construction of an elevator shaft and installation of a passenger elevator, which Defendants installed to provide for travel between Columbus Circle Imaging's cellar level reception area and the sub-cellar level where patrons receive diagnostic imaging services;

    b. the construction of new stairs between Columbus Circle Imaging's cellar and subcellar levels;

    c. the installation of floors, the construction of new rooms, including rooms to provide patients diagnostic imaging services, and restrooms;

    d. the construction of interior walls and partitions;

and

    e. the installation of restrooms, as well as mechanical and electrical work.

39. At various times after January 26, 1992, Defendants remodeled, renovated, and/or reconstructed Five Columbus' public entrance, lobby, and the interior routes to Columbus Circle Imaging from the public entrance and lobby in a manner that affected or could have affected the way the space, or part of the space, is used.

40. The work Defendants performed to Five Columbus' public entrance, lobby, and the interior route from the public entrance to Columbus Circle Imaging included:

    a. the installation and construction of interior walls and partitions, and changes to the

public entrance doors in the 2016 calendar year;

and

b.  structural work, including framing and the installation of steel columns, to Five

Columbus' public entrance and the interior route from the public entrance to

Columbus Circle Imaging in 2017.

41. Although Defendants were aware of their obligations under the ADA and the City HRL

to provide and maintain accessibility for disabled individuals that use wheelchairs access to

Columbus Circle Imaging, Defendants did not comply with their ADA and City HRL

obligations.

42. Instead, Defendants performed construction work to Columbus Circle Imaging and the

routes to Columbus Circle Imaging at Five Columbus Circle without providing the minimum

required accessibility for disabled individuals that use wheelchairs.

### *Plaintiff's Visit to Columbus Circle Imaging*

43. Plaintiff last utilized Columbus Circle Imaging in June 2024 for diagnostic imaging

services; specifically, x-rays.

44. Plaintiff arrived at the public entrance to Five Columbus located on Broadway and was

dismayed by what he discovered after opening the exterior door: steps at the interior of the

entrance lobby which barred him from travelling to Columbus Circle Imaging.

45. Stressed that he would be unable to have his X-rays done, Plaintiff looked around and

saw signage which directed individuals with disabilities to go around the corner to West 58th

Street to access an accessible public entrance.

46. Plaintiff did so only to discover that there was no accessible public entrance on West 58th

Street; there was only a service entrance to Five Columbus on West 58th Street.

47. Once at the service entrance, Plaintiff was forced to wait, and wait, and wait some more, until some 30 minutes later a building worker finally arrived to allow him entry into Five Columbus, and to operate the freight elevator which Plaintiff was required to travel on to enter Columbus Circle Imaging.

***Columbus Circle Imaging***

48. The Radnet Defendants promote Columbus Circle Imaging as a "premiere … outpatient radiology center located in the heart of NYC". *Columbus Circle Imaging, Mid Rockland Imaging, New York Radiology MRI, PET/CT, Ultrasound, Mammography*, RadNet, https://www.radnet.com/lenox-hill-radiology/locations/columbus-circle-imaging (last visited January 19, 2025).

49. The Radnet Defendants inform current and prospective patrons that Columbus Circle Imaging

> can accommodate all of your imaging needs at one convenient location and offers the latest innovations in medical imaging. [Asking patrons to] [c]all or text … to learn more on how LHR can help you on your health journey.

*Id.*

50. The Radnet Defendants also publicize Columbus Circle Imaging's long-term relationships with its patrons, highlighting reviews from long term customers on their website: "I have been utilizing this facility for years (more tgen [sic] ten b [sic] years)". *See Id*.

51. X-ray imaging and computed tomography (CT) scans are among the specific diagnostic imaging services the Radnet Defendants offer at Columbus Circle Imaging.

***Plaintiff's Future Visits to Columbus Circle Imaging***

52. Plaintiff is in the Columbus Circle area in which Columbus Circle Imaging is located 20 or more times a year.

53. Among the reasons Plaintiff goes to the Columbus Circle area is to shop, dine, people watch, and stroll, enjoying the neighborhood and nearby Central Park.

54. The Columbus Circle area is also conveniently located on the route Plaintiff takes for work.

55. Plaintiff utilizes diagnostic imaging services two to four times a year.

56. Plaintiff has X-ray imaging taken approximately twice a year, and a CT scan once or twice a year.

57. As Plaintiff requires diagnostic imaging services two to four times a year his need for the diagnostic imaging services offered at Columbus Circle Imaging continues.

58. Plaintiff desires to patronize Columbus Circle Imaging for X-rays and CT scans as Columbus Circle Imaging is a premier diagnostic imaging center located in a neighborhood Plaintiff frequents twenty or more times a year.

59. Plaintiff also desires to patronize Columbus Circle Imaging because it provides a wide range of premier diagnostic imaging services at a single location convenient for Plaintiff.

60. Plaintiff desires the opportunity to avail himself of Columbus Circle Imaging services going forward in the same manner as non-wheelchair bound individuals. For instance, without being required to wait for a building employee to allow him to enter through a service entrance through which garbage is disposed and having to travel by freight elevator used for refuse and materials.

61. Plaintiff is deterred from patronizing Columbus Circle Imaging as Defendants require him to use an inferior and segregated means of entry to access Columbus Circle Imaging.

62. Because the architectural barriers deny Plaintiff entry into Five Columbus and Columbus Circle Imaging though the publicly available entrance and paths of travel, Plaintiff was denied

full and equal access to, and full and equal enjoyment of Columbus Circle Imaging, a place of public accommodation.

63. By maintaining architectural barriers at the publicly available entrance and paths of travel and requiring Plaintiff to use a separate service entrance and elevator meant for the transport of merchandise and refuse Defendants discriminate against Plaintiff due to his disability.

64. Columbus Circle Imaging is a place of public accommodation as defined by the ADA and the City HRL, because it is a professional office of a health care provider. Alternatively, Columbus Circle Imaging is place of public accommodation as defined by the ADA and the City HRL, because it is a service establishment.

65. As a place of public accommodation, Defendants are required to ensure Columbus Circle Imaging is built, operated, and maintained in compliance with the ADA and the City HRL.

66. The ADA and the City HRL impose joint and several liability on the owner, lessor, and lessee of the location in which a place of public accommodation is located, as well as upon the operator and owner of the place of public accommodation. Each of these entities are defined as a "public accommodation". ADA, 42 U.S.C. § 12181 and 28 C.F.R. § 36.104 and the City HRL, Administrative Code § 8-102.

67. Each Defendant is therefore a public accommodation. 1790 Bdwy Assocs is a public accommodation as it owns and leases the physical space within Five Columbus in which Columbus Circle Imaging is located; Mid Rockland Imaging is a public accommodation as it owns and operates Columbus Circle Imaging and leases the space in which Columbus Circle Imaging is located at Five Columbus from 1790 Bdwy Assocs; and Radnet is a public accommodation as it owns and operates Columbus Circle Imaging.

68. Defendants denied Plaintiff the opportunity to participate in and benefit from the services

and accommodations offered at Columbus Circle Imaging due to his disability, causing Plaintiff to suffer an injury in fact.

69. Plaintiff suffered an injury in fact in June 2024 when Defendants denied him entry to Columbus Circle Imaging through the public entrance and passenger elevators at Five Columbus due to their maintenance of architectural barriers – steps – at the public entrance.

70. Plaintiff suffered an injury in fact in June 2024 when Defendants required him to use a segregated and inferior entrance and elevator to enter Five Columbus and access Columbus Circle Imaging due to their maintenance of architectural barriers – steps – at the public entrance.

71. Defendants continue to maintain the architectural barriers at Five Columbus' public entrance, and therefore continue to deny Plaintiff equal, unsegregated, independent, and wheelchair accessible entry to Columbus Circle Imaging.

72. Because Defendants continue to maintain architectural barriers at Five Columbus' public entrance, Defendants continue to deny Plaintiff equal access entry due to his disability.

73. Plaintiff is deterred from visiting Columbus Circle Imaging because he is aware that Defendants deny him the opportunity to enter Columbus Circle Imaging through the public entrance.

74. Plaintiff is deterred from visiting Columbus Circle Imaging because he is aware that Defendants require him to use a segregated and inferior means of entry, a service entrance and freight elevator Defendants use to transport of rubbish, refuse and materials.

75. Plaintiff is deterred from visiting Columbus Circle Imaging because he is aware that Defendants do not allow him independent access as they require him to rely on an employee of 5 Columbus to grant him access through the service entrance and to operate the freight elevator to access Columbus Circle Imaging.

76. As Plaintiff is deterred by the architectural barriers and means by which he must access Columbus Circle Imaging, Plaintiff continues to suffer an injury in fact from Defendants' maintenance of architectural barriers at Five Columbus.

77. As Defendants continue to deny Plaintiff the opportunity to participate in and benefit from the services and accommodations offered at Columbus Circle Imaging, Defendants cause Plaintiff to suffer an ongoing injury.

78. Defendants' failure to comply with the ADA and the City HRL infringes upon Plaintiff's rights to be free from discrimination based on disability and to have independent access to Columbus Circle Imaging.

79. Defendants offer ambulatory individuals the opportunity to visit Columbus Circle Imaging through the public entrance and passenger elevators but deny Plaintiff this opportunity based on disability.

80. Defendants offer ambulatory individuals the opportunity to independently visit Columbus Circle Imaging but deny Plaintiff this opportunity based on disability.

81. Plaintiff intends to visit Columbus Circle Imaging after the architectural barriers at Five Columbus' public entrance and interior routes, and those within Columbus Circle Imaging's space are removed and these areas are made compliant with the ADA and the City HRL.

82. Architectural barriers which Plaintiff encountered and those that deter him from patronizing Columbus Circle Imaging include, but are not limited to, the following violations of the ADA Standards[1] and the NYC Standards[2]:

---

[1] The ADA Standards consist of (i) the 1991 ADA Standards for Accessible Design codified in 28 CFR part 36 Appendix A; (hereinafter referred to as the "1991 ADA Standards"); and (ii) the 2010 Standards for Accessible Design codified in 36 CFR part 1191 Appendices B and D, and 28 CFR part 36 Appendix A, subpart D (hereinafter referred to as the "2010 ADA Standards").
[2] The NYC Standards consist of (i) the accessibility provisions of the 1968 New York City Building Code, N.Y.C. Admin. Code § 27-292.1 *et seq*. (the "1968 BC"), inclusive of ANSI A117.1-1986 as modified by 1968 BC

A.  An accessible route is not provided from the public street and sidewalk to the public entrance for Five Columbus and Columbus Circle Imaging.
*Defendants fail to provide that at least one accessible route shall be provided within the site from public streets and sidewalks to the accessible building or facility entrance they serve. See 1991 ADA § 4.1.2(1); 2010 ADA § 206.2.1; 1968 BC§ 27-292.5(b); 2008 BC § 1104.1; 2014 BC § 1104.1; and 2022 BC § 1104.1.*

B.  There are steps at the interior side of Five Columbus' entrance door which have a change in level greater than ½ inch high.
*Defendants fail to provide that changes in level at accessible routes greater than 1/2-inch-high shall be overcome with a ramp, elevator, or platform lift. See 1991 ADA § 4.3.8; and 1968 Ref Std § 4.3.8.*
*Defendants fail to provide that changes in level at accessible routes greater than 1/2-inch-high shall be ramped. See 2010 ADA § 303.4; 2008 Ref Std § 303.3; 2014 Ref Std § 303.4; and 2022 Ref Std § 303.4.*

C.  The route from Five Columbus' public entrance to the public lobby, passenger elevators, and the public entrance to Columbus Circle Imaging is obstructed by steps.
*Defendants fail to provide accessible routes that are stable, firm and slip resistant with running slopes not more than five percent (1:20) and cross slopes not more than two percent (1:48).  See 1991 ADA § 4.3.1; 2010 ADA § 403.1; 1968 Ref Std § 4.3.1; 2008 Ref Std § 403.1; 2014 Ref Std § 403.1; and 2022 Ref Std § 403.1.*

D.  Five Columbus and Columbus Circle Imaging's public entrance is not accessible.
*Defendants fail to provide that at least 50% of the public entrances are accessible.  See 1991 ADA § 4.1.3(8)(a)(i).*
*Defendants fail to provide that at least 60% of the public entrances are accessible.  See 2010 ADA § 206.4.1.*
*Defendants fail to provide that primary entrances are accessible. See 1968 BC § 27-292.5(a).*
*Defendants fail to provide that all public entrances are accessible. See 2008 BC § 1105.1; 2014 BC § 1105.1; and 2022 BC § BC 1105.1.*

E.  No signage identifies an accessible public entrance for Five Columbus and Columbus Circle Imaging (to the extent Defendants claim they provide an accessible public entrance).
*Defendants fail to display signage (marked with the International Symbol of Accessibility or otherwise) that identifies an accessible entrance. See 1991 ADA §§ 4.1.2(7)(c); 4.1.3(8)(d); and 4.1.6(1)(h); 2010 ADA § 216.6; 1968 BC § 27- 292.18; 2008 BC § 1110; 2014 BC §§ 1101.3.4 and 1110; and 2022 BC §§ 1101.3.4 and 1111.1.*

---

Reference Standard RS 4-6 (the "1968 Ref Std", and together with the 1968 BC, the "1968 NYC Standards"); (ii) the accessibility provisions of the 2008 New York City Building Code, N.Y.C. Admin. Code § 28-1101 *et seq.* and Appendix E (the "2008 BC"), inclusive of ICC A117.1-2003 (the "2008 Ref Std") and together with the 2008 BC, the "2008 NYC Standards"); (iii) the accessibility provisions of the 2014 New York City Building Code, N.Y.C. Admin. Code § 28-1101 *et seq.* and Appendix E (the "2014 BC"), inclusive of and ICC A117.1-2009 (the "2014 Ref. Std., and together with the 2014 BC, the "2014 NYC Standards"); and (iv) the accessibility provisions of the 2022 New York City Building Code, N.Y.C. Admin. Code § 28-1101 *et seq.* and Appendix E (the "2022 BC"), inclusive of ICC A117.1-2009 (the "2022 Ref. Std., and together with the 2022 BC, the "2022 NYC Standards").

F.  No directional signage at the inaccessible public entrance for Five Columbus and Columbus Circle Imaging that indicates the location of an accessible public entrance for Five Columbus and Columbus Circle Imaging (to the extent Defendants claim they provide an accessible entrance).
*Defendants do not provide and display signage at the inaccessible public entrance (marked with the International Symbol of Accessibility or otherwise) that indicates the location of an accessible public entrance. See 1991 ADA §§ 4.1.6(1)(h) and 4.1.3(8)(d); and 2010 ADA Standards § 216.6.*
*Defendants fail to provide directional signage at necessary locations. See 1968 BC § 27-292.18(b).*
*Defendants fail to provide directional signage by the inaccessible public entrance indicating the route to the nearest accessible public entrance. See 2008 BC § 1110.2; 2014 BC §§ 1101.3.3; and 1110.2; and 2022 BC §§ 1101.3.3 and 1111.2*

G.  The public entrance for Five Columbus and Columbus Circle Imaging, which is also an exit from Five Columbus and Columbus Circle Imaging, is not accessible for the reasons described above.
*Defendants fail to provide that accessible spaces shall have not less than one accessible means of egress, or where more than one general means of egress is required from any accessible space, each accessible portion on the space shall be served by not less than two accessible means of egress.  See 2010 ADA § 207.1 (2000 IBC 1003.2.13); 2008 BC § 1007.1; 2014 BC § 1007.1; and 2022 BC § 1009*
*Defendants fail to provide that buildings shall have at least one primary entrance (exit) accessible to and usable by individuals who use wheelchairs, and such entrance shall provide access to a level that makes elevators available in buildings where elevators are provided. See 1968 BC § 27-357(d).*

83. Upon information and belief, a full inspection of Five Columbus' public areas that provide a route to Columbus Circle Imaging, and a full inspection of Columbus Circle Imaging's premises will reveal the existence of other barriers to access.

84. To properly remedy Defendants unlawful discrimination and avoid piecemeal litigation, Plaintiff requires a full inspection of Five Columbus' public areas that provide a route to Columbus Circle Imaging, and Columbus Circle Imaging's premises, to catalogue any other architectural barriers and have Defendants remediate them.

85. Plaintiff therefore gives notice that, to the extent not contained in this Complaint, he

intends to amend his Complaint to include any violations of the Accessibility Standards[3] or

Human Rights Laws discovered during an inspection of Columbus Circle Imaging.

**FIRST CAUSE OF ACTION**
**(VIOLATIONS OF THE AMERICANS WITH DISABILITIES**
**ACT)**

86. Plaintiff re-alleges and incorporates each and every allegation contained in the above

paragraphs as if fully set forth herein.

87. Plaintiff is substantially limited in the life activity of both walking and body motion range

and thus has a disability within the meaning of the ADA. 42 U.S.C. § 12102; 28 C.F.R. §

36.105(a) and (b).

88. As a direct and proximate result of Plaintiff's disability, Plaintiff requires a wheelchair

for mobility and has restricted use of his arms and hands.

89. "Both the landlord who owns the building that houses a place of public accommodation

and the tenant who owns or operates the place of public accommodation are 'public

accommodations' subject to" the ADA. 42 U.S.C. § 12182(a); 28 C.F.R. § 36.201(b).

90. The ADA imposes joint and several liability on each of the owner of a building in which

a place of public accommodation is located, the lessor of space in a building to a place of public

accommodation, the lessee of space in a building for a place of public accommodation, and the

owner or operator of the place of public accommodation. *See* 28 C.F.R. § 36.201(b).

91. Therefore, pursuant to the ADA, each of the building owner, lessor, lessee, owner, and

operator of Columbus Circle Imaging, a place of public accommodation is liable to Plaintiff. *See*

*Id.*

---

[3] The ADA Standards together with the NYC Standards are collectively referred to herein as the "Accessibility Standards".

92. None of the Defendants can avoid liability under the ADA by transferring their obligations to comply with the ADA to another entity. 28 C.F.R. 36.201(b).

93. Defendants continue to subject Plaintiff to disparate treatment by denying Plaintiff full and equal opportunity to access Columbus Circle Imaging on the basis of disability.

94. Defendants' policies and practices continue to subject Plaintiff to disparate treatment and disparate impact.

95. By failing to comply with the law in effect for decades, Defendants have articulated to disabled persons such as the Plaintiff that they are neither desired nor welcome as patrons of Columbus Circle Imaging.

96. Defendants performed design and construction work to build out Columbus Circle Imaging but failed to perform the work so that their place of public accommodation, Columbus Circle Imaging, complies with the 1991 ADA Standards or the 2010 ADA Standards.

97. Because Columbus Circle Imaging does not comply with the ADA Standards it is not readily accessible to and usable by Plaintiff due to his mobility disability. *See* 28 C.F.R. § 36.401(A)(1) and 42 U.S.C. § 12183(a)(1).

98. Defendants discriminate against Plaintiff in violation of the ADA as they built a place of public accommodation that is not accessible to Plaintiff based on disability. *See* 28 C.F.R. § 36.401(A)(1) and 42 U.S.C. § 12183(a)(1).

99. Defendants fail to provide an integrated and equal setting for the disabled at Columbus Circle Imaging in violation of 42 U.S.C. §12182(b)(1)(A) and 28 C.F.R. § 36.203.

100.    In violation of 28 C.F.R. §§ 36.402 and 36.406 and 42 U.S.C. §12183(a)(2), Defendants failed to make Columbus Circle Imaging compliant with the ADA Standards to the maximum extent feasible when they performed work that constituted alterations to Columbus

Circle Imaging's space.

101.     Defendants failed to provide "readily accessible and usable" paths of travel to the altered primary function areas of Columbus Circle Imaging in violation of 28 C.F.R. § 36.403.

102.     Defendants failed to make all readily achievable accommodations and modifications to remove barriers to access at Columbus Circle Imaging in violation of 28 C.F.R. § 36.304.

103.     It has been and remains readily achievable for Defendants to make Columbus Circle Imaging accessible by complying with the ADA Standards.

104.     By failing to remove the barriers to access where it is readily achievable to do so, Defendants have discriminated against Plaintiff on the basis of disability in violation of 42 U.S.C. § 12182(a), § 12182(b)(2)(A)(iv), and 28 C.F.R. § 36.304.

105.     In the alternative, Defendants have violated the ADA by failing to provide Plaintiff with reasonable alternatives to barrier removal to the extent Defendants allege that the removal of any of the barriers to access was, and remains, not readily achievable. 28 C.F.R. § 36.305.

106.     Defendants' failure to remove the barriers to access constitutes a pattern and practice of disability discrimination in violation of 42 U.S.C. § 12181 *et. seq.*, and 28 C.F.R § 36.101 *et. seq.*

107.     Defendants continue to discriminate against Plaintiff in violation of the ADA by maintaining a place of public accommodation that is not compliant with the ADA Standards, and therefore not accessible.

## SECOND CAUSE OF ACTION
### (VIOLATIONS OF THE NEW YORK CITY HUMAN RIGHTS LAW)

108.     Plaintiff re-alleges and incorporates each and every allegation contained in the above paragraphs as if fully set forth herein.

109.     Plaintiff suffers from medical conditions that separately and together impair

Plaintiff's bodily systems - in particular, the life activity of both walking and body motion range.

110. Due to his impaired bodily functions, Plaintiff has a disability within the meaning of the City HRL. N.Y.C. Admin. Code § 8-102.

**Section 8-107(4)(a)(1)(a) Violations: Denial of Equal Opportunity.**

111. The City HRL guarantees the right of all individuals, regardless of disability, to equal opportunity (*i.e.*, equal access) to places of public accommodation.

112. "Equal access, in the words of the City HRL, is the opportunity to have "full and equal enjoyment, on equal terms and conditions" to the accommodations, advantages, services, facilities, and privileges of a place of public accommodation. N.Y.C. Admin. Code § 8-107(4).

113. Defendants engage in an unlawful discriminatory practice prohibited by the City HRL as they as they created and maintain a place of public accommodation, Columbus Circle Imaging, which is not accessible to Plaintiff due to disability. N.Y.C. Admin. Code § 8-107(4)(a)(1)(a).

114. Defendants are also liable for the conduct of their employees and agents which resulted in the creation and maintenance of a place of public accommodation which is not accessible. N.Y.C. Admin. Code § 8-107(13).

115. Because Defendants created and maintain a place of public accommodation that is not accessible to Plaintiff due to disability, Defendants directly and indirectly "refuse, withhold from, or deny" Plaintiff equal opportunity to enjoy the "accommodations, advantages, services, facilities or privileges" of Columbus Circle Imaging due to his disability.

116. Defendants' policies and procedures inclusive of their policies of refusing to expend funds to design, create and maintain an accessible place of public accommodation is a discriminatory practice in violation of City HRL. N.Y.C. Admin. Code § 8-107 (4).

117.    Defendants' failure to construct and maintain an accessible entrance from the public sidewalk to Columbus Circle Imaging constitutes disability discrimination in a violation of the City HRL. N.Y.C. Admin. Code § 8-107(4)(a)(1)(a); *See* also N.Y.C. Admin. Code § 19-152 and § 7-210.

118.    Defendants' failure to provide an accessible place of public accommodation and consequent denial of equal opportunity to Plaintiff constitutes an ongoing continuous pattern and practice of disability discrimination. in violation of the City HRL. N.Y.C. Admin. Code § 8-107(4)(a)(1)(a).

119.    Defendants discriminate against Plaintiff as they subject him to disparate impact in violation of the City HRL. N.Y.C. Admin. Code § 8-107(4).

120.    Defendants subject Plaintiff to disparate impact as they directly and indirectly deny Plaintiff equal opportunity to enjoy the accommodations, advantages, facilities, and privileges of Columbus Circle Imaging because of his disability.

121.    Defendants' policies or practices, "whether neutral on their face and [or] neutral in intent" result in a disparate impact to the detriment of the individuals with mobility disabilities, the protected class of which Plaintiff is a member. *See* N.Y.C Admin. Code § 8-107(17); and *Levin v Yeshiva Univ.*, 96 NY2d 484, 489(2001).

122.    Defendants' failure to comply with the NYC Building Code as well as their failure to expend monies to upgrade and alter Columbus Circle Imaging to remove obsolete features such as stepped entrances, are policies and practices that have a significantly adverse and disproportionate impact on persons with mobility disabilities, including Plaintiff.

123.    Because the result of Defendants' policies and practices is a place of public accommodation that is not accessible to people with mobility disabilities, Plaintiff has

demonstrated that Defendants' policy or practice has a disproportionately negative impact on the disabled including Plaintiff.

**Section 8-107(15) Violations: Failure to Provide Reasonable Accommodations.**

124.    Defendants also discriminate against Plaintiff in violation of the City HRL as they have not made reasonable accommodations for the needs of persons with disabilities. N.Y.C. Admin. Code § 8-107(15)(a).

125.    Defendants' failure to make reasonable accommodations include their failure to remove the architectural barriers to access detailed herein so that individuals with disabilities, including Plaintiff, have equal opportunity to enjoy what Defendants offer at Columbus Circle Imaging. *See Id*.

126.    Defendants have known, or should have known, that members of the public, which includes current and prospective patrons such as Plaintiff, have mobility disabilities.

127.    Defendants have known, or should have known, reasonable accommodations (including by failing to remove the architectural barriers to access detailed herein) are required so that persons with mobility disabilities can have the equal opportunity to enjoy what Defendants offer at Columbus Circle Imaging.

128.    It would not cause undue hardship in the conduct of the Defendants' business to remove the architectural barriers to access detailed herein as a reasonable accommodation for persons with disabilities.

129.    Defendants cannot demonstrate that it would cause undue hardship to the conduct of their respective businesses to remove the architectural barriers to access detailed herein as a reasonable accommodation for persons with disabilities.

130.    Defendants' failure to provide reasonable accommodations for persons with

disability, inclusive of Defendants' failure to remove the barriers to access identified in

Paragraph 50 herein, and their consequent denial of equal opportunity to Plaintiff, constitutes an

ongoing continuous pattern and practice of disability discrimination in violation of the City HRL.

N.Y.C. Admin. Code § 8-107(4)(a)(1)(a)

**Section 8-130: The City HRL's Construction and Maximally Protective Role.**

131.    To further the City HRL's "uniquely broad remedial purposes" (Local Law No. 85

(2005) of City of New York § 7) and to ensure that it the law is "maximally protective of civil

rights in all circumstances" (Local Law No. 35 (2016) of City of New York § 1), the New York

City Council amended the City HRL's Construction provision, N.Y.C. Admin. Code § 8-130, in

2005 and 2016. Local Law 85 (2005), and Local Law 35 (2016).

132.    The 2005 and 2016 amendments confirm that the City HRL is not coextensive with

federal or state civil rights laws "regardless of whether federal or New York State civil and

human rights laws, including those laws with provisions comparably worded to provisions of this

title, [the City HRL,] have been so construed". N.Y.C. Admin. Code § 8-130(a), as amended by

Local Law 85 § 7 and Local Law 35 § 2.

133.    The 2005 and 2016 amendments instead provide that the City HRL's protections are

cumulative to the protections provided by federal or state civil rights laws, as the City HRL must

"be interpreted liberally and independently of similar federal and state provisions" to accomplish

the City HRL's uniquely broad and remedial purposes "as one of the most expansive and

comprehensive human rights laws in the nation". Rep of Governmental Affairs Div, Comm on

Civ Rights at 6 and 8, March 8, 2016, Local Law Bill Jacket, Local Law No. 35 (2016) of City of

NY (Adding to Local Law 85 § 1's already explicit language which provided that the obligations

imposed on entities subject to the City HRL by "similarly worded provisions of federal and state

civil rights laws [are] as a floor below which the City's Human Rights law cannot fall.").

134.    The 2016 Amendments to the City Human Rights Law additionally direct that "[e]xceptions to and exemptions from the provisions of this title [(the City HRL)] shall be construed narrowly in order to maximize deterrence of discriminatory conduct". N.Y.C. Admin. Code § 8-130(b), as amended by Local Law 35 (2016) § 2.

135.    Due to the above-referenced amendments, the New York City Human Rights Law provides significantly greater protections to its protected classes "in all circumstances" than what the ADA and the New York State Human Rights Law, Title 15 of the Executive Law ("State HRL") provide to persons in the same protected classes.

136.    Defendants' conduct is therefore subject to a markedly stricter standard under the City HRL than under Federal and state anti-discrimination law.

137.    Defendants' liability under the City HRL for their conduct alleged herein must be determined separately and independently from their liability under the ADA or State HRL, to the extent that Defendants escape liability under the ADA or State HRL. N.Y.C. Admin. Code § 8-130, as amended by Local Law 85 and Local Law 35.

138.    Conversely to the extent that Defendants' conduct alleged herein violates the ADA or State HRL, Defendants automatically violate the City HRL.

139.    Therefore, Defendants' violations of the ADA, the ADA Standards, and the State HRL alleged herein constitute discrimination under the City HRL.

140.    Defendants continue to discriminate based on disability in violation of the City HRL (N.Y.C. Admin. Code § 8-107(4)) due to their ongoing violations of the ADA, the ADA Standards, and the State HRL alleged herein.

141.    The City HRL's stricter standards also apply in situations where the ADA and the

State HRL have provisions that are comparably worded to the City HRL's provisions. N.Y.C.

Admin. Code § 8-130.

142.    Defendants must therefore provide an accessible place of public accommodation,

regardless of their obligation to provide accessibility under similarly worded provisions of the

ADA or the State HRL.

**Section 8-107(6) Violations: Aid and Abet Discrimination.**

143.    In violation of the City HRL, Defendants have and continue to, aid and abet, incite,

compel, or coerce each other in each of the other Defendants' attempts to, and in their acts of

directly and indirectly refusing, withholding, and denying the accommodations, advantages,

facilities, and privileges of their place of public accommodation, all because of disability. N.Y.C.

Admin. Code § 8-107(6).

144.    Each of the Defendants have aided and abetted others in committing disability

discrimination.

145.    Defendants' conduct constitutes an ongoing and continuous violation of the City

HRL.

146.    Unless Defendants are enjoined from further violations, Plaintiff will continue to

suffer injuries for which there is no adequate remedy at law.

147.    Plaintiff will suffer irreparable harm by being denied the accommodations,

advantages, facilities, or privileges of the Defendants' place of public accommodation.

148.    As a direct and proximate result of Defendants' unlawful discrimination in violation

of the City HRL, Plaintiff has suffered, and continues to suffer emotional distress, including

humiliation, stress, and embarrassment.

149.    Upon information and belief, Defendants' long-standing refusal to make their place of

public accommodation fully accessible was deliberate, calculated, egregious, and undertaken with reckless disregard to Plaintiff's rights under the City HRL.

150.    By failing to comply with the law in effect for decades, Defendants have articulated to disabled persons such as the Plaintiff that they are not welcome, objectionable, and not desired as patrons of their public accommodation.

151.    Defendants engaged in discrimination with willful or wanton negligence, and/or recklessness, and/or a conscious disregard of the rights of others and/or conduct so reckless as to amount to such disregard for which Plaintiff is entitled to an award of punitive damages pursuant to City HRL N.Y.C. Admin. Code § 8-502.

152.    By refusing to make their place of public accommodation accessible, Defendants have unlawfully profited from their discriminatory conduct by diverting monies they should have used to provide an accessible space to themselves.

153.    By refusing to make their place of public accommodation accessible, Defendants have unlawfully benefited from their discriminatory conduct by collecting revenue from a non-compliant space.

154.    Defendants continue to take for themselves funds they are required to spend to make Five Columbus and Columbus Circle Imaging accessible.

155.    The amounts Defendants diverted to themselves, and the unlawful revenues they gained, plus interest must be disgorged.

156.    Plaintiff has suffered and will continue to suffer damages in an amount to be determined at trial.

## **INJUNCTIVE RELIEF**

157.    Plaintiff will continue to experience unlawful discrimination as a result of

Defendants' failure to comply with the above-mentioned laws. Therefore, injunctive relief which Orders Defendants to alter and modify their place of public accommodation to comply with the Accessibility Standards and the Human Rights Laws, is necessary.

158.    Injunctive relief is necessary to make Defendants' place of public accommodation readily accessible to and usable by Plaintiff in accordance with the above-mentioned laws.

159.    Injunctive relief is also necessary to order Defendants to provide auxiliary aids or services, modification of their policies, and/or provision of alternative methods, in accordance with the ADA and the City HRL.

## JURY DEMAND

160.    Plaintiff demands a trial by jury on all claims so triable.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests that the Court enter a judgment against the Defendants, jointly and severally, in favor of Plaintiff that contains the following relief:

A.  Enter declaratory judgment declaring that Defendants have violated the ADA inclusive of its implementing regulations and the City HRL, and declaring the rights of Plaintiff as to Defendants' place of public accommodation, and Defendants' policies, practices, and procedures;

B.  Issue a permanent injunction ordering Defendants to close Columbus Circle Imaging at Five Columbus to the public until Defendants remove all violations of the ADA, the 2010 Standards, and the City HRL, including but not limited to the violations set forth above;

C.  Retain jurisdiction over the Defendants until the Court is satisfied that the Defendants' unlawful practices, acts and omissions no longer exist and will not again occur;

D.  Award Plaintiff compensatory damages as a result of Defendants' violations of the City HRL;

E.   Award Plaintiff punitive damages in order to punish and deter the Defendants for their violations of the City HRL;

F.   Find that Plaintiff is a prevailing party and award reasonable attorney's fees, costs, and expenses pursuant to the ADA and City HRL; and

G.   For such other and further relief, at law or in equity, to which Plaintiff may be justly entitled.

Dated: January 19, 2025
New York, New York

Respectfully submitted,

**HANSKI PARTNERS LLC**

By:/s_____
Adam S. Hanski
Attorneys for Plaintiff
85 Delancey Street
New York, New York 10002
Telephone: (212) 248-7400
Email: ash@disabilityrightsny.com